# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION FOR ACQUITTAL AND NEW TRIAL** |
| vs. | ) | |
| | ) | Case No. 4:10-cr-070-2 |
| Dustin Morsette, a/k/a Dusty | ) | |
| James Morsette, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Dustin Morsette's "Motion for Judgment of Acquittal and New Trial" filed on April 24, 2012. See Docket No. 248. The Government filed a response in opposition to the motion on May 2, 2012. See Docket No. 250. Morsette filed a reply brief on May 9, 2012. See Docket No. 251. For the reasons explained below, the motion is denied.

## I.  BACKGROUND

On April 2, 2012, Dustin Morsette was tried on eighteen criminal counts. At the close of the Government's case, Morsette made a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The Court granted the motion as to Count Fifteen (attempted sexual abuse of a minor) but denied the motion with regard to the remaining counts. The Court found the testimony of the victim in Count Fifteen established that she was not between the ages of twelve and sixteen at the time of the incident, and sufficient evidence did not exist to support a conviction on that count. The Government agreed that Count Fifteen should be dismissed. With respect to the remaining counts, the Court found that the testimony of the witnesses, especially the victims, sufficiently established all the elements of the charged offenses. Morsette renewed the Rule 29

motion after the presentation of his evidence. The Court again denied the motion. On April 10, 2012, the jury convicted Morsette on all remaining seventeen counts which are as follows:

> Count One: Aggravated sexual abuse
> Count Two: Aggravated sexual abuse
> Count Three: Sexual abuse of a minor
> Count Four: Sexual abuse of a minor
> Count Five: Sexual abuse
> Count Six: Sexual abuse
> Count Seven: Sexual abuse
> Count Eight: Sexual abuse of a minor
> Count Twelve: Aggravated sexual abuse
> Count Thirteen: Aggravated sexual abuse
> Count Fourteen: Sexual abuse of a minor
> Count Sixteen: Conspiracy
> Count Seventeen: Use or employment of a minor in drug trafficking
> Count Eighteen: Use or employment of a minor in drug trafficking
> Count Nineteen: Use or employment of a minor in drug trafficking
> Count Twenty: Tampering with a witness
> Count Twenty-One: Sex trafficking

See Docket No. 233.

On April 24, 2012, Morsette filed a "Motion for Judgment of Acquittal and New Trial." See Docket No. 248. Morsette contends the evidence was insufficient to support convictions on Counts One through Six. He alleges the victims' testimony as to those counts was not credible. He argues the testimony of the victim in Count Fourteen was contradicted by the testimony of co-defendant Medicine Bird Morsette, and therefore the evidence was insufficient to support the conviction. As to Count Seventeen, Morsette argues that the victim testified that co-defendant Francene Azure used her in drug trafficking, not Morsette. Finally, regarding Count Twenty-One, Morsette contends the jury was confused and the evidence was not sufficient to support a conviction.

The Government filed a response in opposition to the motion on May 2, 2012. See Docket No. 250. The Government essentially contends that Morsette's motion is primarily based on issues

of witness credibility, and the jury has the responsibility to resolve conflicts in testimony and determine the credibility of witnesses. The Government argues that the Court should deny Morsette's motion for acquittal because sufficient evidence exists to support a conviction on each of the counts. The Government also argues the Court should deny Morsette's motion for a new trial because a miscarriage of justice did not occur.

## II. LEGAL DISCUSSION

### A. MOTION FOR ACQUITTAL

Rule 29 of the Federal Rules of Criminal procedure provides:

**(a) Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

. . .

**(c) After Jury Verdict or Discharge.**

> **(1) Time for a Motion.** A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.
>
> **(2) Ruling on the Motion.** If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.
>
> **(3) No Prior Motion Required.** A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Fed. R. Crim. P. 29.

The Eighth Circuit Court of Appeals has explained:

[The Court reviews] the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012). "Reversal is warranted only if no reasonable jury could have found guilt beyond a reasonable doubt." Id. We further note that "in reviewing a defendant's challenge to the sufficiency of the evidence, '[w]itness testimony . . . does not need to be corroborated.'" United States v. Perez, 663 F.3d 387, 391 (8th Cir. 2011) (alterations in original) (quoting United States v. Jefferson, 652 F.3d 927, 930 (8th Cir. 2011), cert. denied, ––– U.S. –––, 132 S.Ct. 1068 (2012)).

United States v. Mayer, 674 F.3d 942, 944 (8th Cir. 2012)

Morsette's motion for judgment of acquittal is primarily based on the credibility of the witnesses. He argues the victims are not credible witnesses and their testimony was not corroborated at trial. However, as the Eighth Circuit has stated:

"[T]he jury is always the ultimate arbiter of a witness's credibility, and this Court will not disturb the jury's findings in this regard." United States v. Claybourne, 415 F.3d 790, 796 (8th Cir. 2005) (quoting United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003) (internal quotation marks omitted)). "Attacks on the sufficiency of the evidence that call upon this court to scrutinize the credibility of witnesses are generally not an appropriate ground for reversal." United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005). We decline to substitute our own judgment for that of the jury.

United States v. White, 675 F.3d 1106, 1109 (8th Cir. 2012).

The Rule 29 motion rests on the credibility of the victims and other witnesses who testified at trial. Morsette suggests the evidence is insufficient as to Counts 1 - 6 because, in part, the victims denied to others they were sexually abused. This provides no support for overturning the jury's verdict. See United States v. Rayl, 270 F.3d 709, 713 (8th Cir. 2001) (defendant's argument that evidence was insufficient because victim's testimony lacked credibility because she admitted she

4

lied to her grandparents rejected; witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact).

Both victims identified as R.U. and P.D. explained their reasons for initially denying that sexual abuse had occurred. R.U. testified that she denied to her mother that she had been sexually abused because she was trying to protect her parents and her family from the shame, embarrassment, and pain of knowing something like this had happened to their daughter. R.U. testified that her mother had enough stressors in her life to deal with, and she did not want to make it worse by disclosing the sex abuse to her. R.U. also explained that she did not report the matter to law enforcement as Morsette had threatened to kill her if she did. P.D. explained that she initially lied because she was afraid of retaliation as she had been jumped by three others who warned that they would do so again if P.D. snitched on Dustin Morsette and Medicine Bird Morsette. Both of these explanations were for the jury to weigh in assessing the credibility of the two victims.

Morsette contends that none of the sex offenses were corroborated by physical evidence. However, medical evidence of sexual abuse is not required to support a conviction. United States v. Rojas, 520 F.3d 876, 881-82 (8th Cir. 2008). Dr. Kimberly Krohn testified that she examined two of the victims, P.D. and S.H., and made findings that there was no acute trauma to either of their genital areas. However, Dr. Krohn explained that such findings were not inconsistent with prior penetration of the children's vaginal areas and described why this was so. While Dr. Krohn did not examine each of the sexual assault victims, her testimony as to the reasons why medical evidence of sex abuse would not likely be found months after an incident was applicable to each of the other victims. The jury was free to accept the physician's testimony and find that sexual contact had

occurred based on the victim's and witnesses' testimony, notwithstanding the absence of corroborating medical evidence.

With respect to Counts 1 - 4, R.U. testified that she engaged in vaginal intercourse with Dustin Morsette on more than five occasions, all of which occurred at Morsette's house in Sanish. FBI Special Agent Sterling Mueller testified that the house is located within the boundaries of the Fort Berthold Indian Reservation. R.U. explained that Morsette's penis penetrated her vagina on each of these occasions. R.U. further explained that there was one occasion where Morsette forcibly inserted his penis into her anus in Morsette's bedroom at the Sanish residence. On that occasion, R.U. testified that Morsette got mad and hit her, pushed her, and threw her down while she tried to push him away, but she was unable to stop him from engaging in anal intercourse. R.U. said that all of the sexual acts occurred in the fall of 2009 when she was 14 - 15 years old. The evidence revealed that Dustin Morsette was 20 years old at this time.

R.U.'s testimony concerning acts of vaginal intercourse was corroborated by G.S., who testified that she heard R.U. and Morsette engaging in sexual acts in Morsette's bedroom. G.S.'s testimony is corroborative despite her inability to describe what specific sexual acts were occurring because it indicated that R.U. and Morsette were involved in a sexual relationship. R.U.'s testimony was also corroborated by A.R.'s testimony of similar, forcible sexual acts of anal intercourse perpetrated on her by Dustin Morsette. See Fed. R. Evid. 413.

Finally, R.U.'s testimony was corroborated by other fact witnesses testimony regarding Morsette's motivation and planning involving gang membership and activity. R.U. testified that she was recruited to be a member of the gang by Morsette, and that she was told to do anything that Dustin Morsette said, including sex. R.U. had a tattoo and burn marks she (and others) testified

6

were signs of membership in the gang. Others witnesses, such as M.A. and P.D., testified that Morsette specifically referred to engaging in sexual acts with him as part of membership in the gang.

With respect to Counts 5 - 6 involving P.D., the evidence was more than sufficient to sustain a conviction on those counts. P.D. testified the sexual contact related to these charges occurred when she was 12 years old (P.D. turned 13 in June 2010). From June 2009 - June 2010, Dustin Morsette was 20 years old. P.D. testified that she and others were at Morsette's residence in Sanish, where she consumed excessive amounts of alcohol and marijuana over a two day period such that she blacked out, awakening to find herself in Medicine Bird Morsette's bed without any clothing on. Others who testified at trial, including Medicine Bird Morsette, J.S., and J.Y.F., corroborated P.D.'s account of her level of intoxication. Each of these individuals testified to either seeing and/or hearing a sexual act taking place between Dustin Morsette and P.D. in the bedroom.

Specifically, Medicine Bird Morsette testified that he observed the door to his bedroom banging back and forth, and then observed Dustin Morsette walk out of the bedroom with a condom hanging off him. Dustin Morsette then commented that P.D. was easy and threw the condom at J.Y.F. or J.S. J.Y.F. testified that he saw Dustin Morsette walk into the bedroom where P.D. was laying. J.Y.F. testified that he heard P.D. and Morsette having sex and he heard P.D. moaning. He then saw Morsette walk out of the bedroom with a condom on. J.Y.F. then went into the bedroom and gave P.D. her pants. J.S. testified that he observed Dustin Morsette enter the bedroom after commenting about wanting to engage in a sexual act. He also saw the door to the bedroom banging back and forth, and looked through a hole in the door and saw Dustin Morsette and P.D. (age 12) having sex. He observed Dustin Morsette exit the bedroom and throw a condom around asking "which one of you is next." J.S. said that he went into the room and P.D. was barely awake at that

7

point and her clothes and underwear were on the floor. This testimony was also corroborated by Francene Azure, who testified that she confronted Dustin Morsette about engaging in sexual acts with young girls after she had been informed of this conduct. Azure testified that Dustin Morsette responded by saying the young girls were already having sex so it didn't matter, they liked it, and would do it again.

With respect to Count 14, A.W. testified that she had vaginal intercourse with Dustin Morsette multiple times at the Sanish residence on the reservation when she was 15 years old. She and Morsette engaged in anal intercourse one time after she had turned 16 in October 2009. Morsette contends the evidence was insufficient to support a conviction on Count 14 because A.W. was not believable. He argues that A.W. insisted the sexual acts occurred in 2007 - 2008 when she and T.G.B. would visit Dustin Morsette and Medicine Bird Morsette at the Sanish residence, but Medicine Bird had been in custody until August 2008 so it was impossible the sexual acts occurred in 2007. However, the record reveals that A.W. initially testified that she was having sexual intercourse with Dustin Morsette multiple times when she was 15 years old and also after she turned 16. A.W. turned 15 in October 2008. When asked on cross-examination if this was in 2007 - 2008, A.W. said she did not remember when it was but stated it occurred when she was 15 - 16 years old. When asked by the Court the general time frame when A.W. would have had sexual contact with Dustin Morsette, A.W. testified that it was between 2007 - 2008 and continuing into 2009. A.W. never testified that she was with T.G.B. on every occasion she was at the Morsette home. Medicine Bird Morsette testified he was not in custody during all of 2007, and only from June 2007 to August 2008. Dustin Morsette testified that he lived at the residence from when he was 15 - 16 years old, except for an unknown period of time when he moved out, and then returned in mid-2008 before

Medicine Bird Morsette returned home. Thus, Dustin Morsette was at the home during the time frames testified to by A.W. A.W. and Dustin Morsette could have engaged in sexual acts at the home during this time frame. It was ultimately for the jury to be the determiner of A.W.'s credibility.

To the extent Dustin Morsette is arguing the conviction is inconsistent with the time frame alleged in the indictment, it is well-established that time is not an essential element of the offense. See United States v. Youngman, 481 F.3d 1015, 1019 (8th Cir. 2007) (time is not an essential element of a sexual offense unless the statute makes it so). 18 U.S.C. § 2243(a) does not make time an essential element of the crime of sexual abuse of a minor. The only requirement is that the Government prove the victim was at least 12 years of age but not yet 16 years of age, and was at least 4 years younger than the defendant. The evidence in this case clearly established these requirements.

With respect to Count 17, Morsette alleges there was no evidence that he employed, hired, persuaded, used, induced or enticed E.L. to engage in drug operations, arguing that the evidence demonstrated that E.L.'s mother did so. However, E.L.'s testimony was directly to the contrary and did establish the elements of the offense. E.L. testified that she went to Dustin Morsette's home in Sanish between 20 - 30 times beginning when she was 12 years old. During these times, E.L. assisted in putting marijuana in baggies to sell. E.L. said she did this on more than one occasion. E.L. testified that Dustin Morsette would bring the marijuana into the room, and then put it away after the marijuana was packaged for sale. E.L. said that both her mother and Medicine Bird Morsette also participated in the packaging of marijuana. E.L. testified that she sought buyers for the marijuana at school, and when she found buyers she would tell her mother who then drove E.L.

9

and the buyer to the Morsette residence to make the purchase. E.L. testified that she heard Dustin Morsette talk about a gang, that the gang involved drugs, and that Dustin Morsette asked her to join the gang. The essential elements of the offense required the Government to prove that Dustin Morsette knowingly and intentionally used E.L. to distribute marijuana, possess marijuana with intent to distribute, or conspire to do so. E.L.'s testimony that she assisted in packaging marijuana for sale and soliciting purchasers that Morsette brought into the house establishes these elements.

With respect to Count 21, Morsette argues the evidence was insufficient that the crime of sex trafficking occurred within Indian country. A.R. testified that the first incident of prostitution occurred at the Four Bears Casino in New Town, North Dakota. FBI Special Agent Sterling Mueller testified that the casino is located within the exterior boundaries of the Fort Berthold Indian Reservation. A.R. testified there were multiple acts of prostitution that occurred at this same location. A.R. testified that Dustin Morsette forcibly raped her prior to the first act of prostitution, and she had been hit by Dustin Morsette, and Morsette had threatened to send nude pictures of her to her father if she did not comply with his demands. At the time of the first act of prostitution, A.R. testified that she said "no" but Morsette told her to go do it and she feared being hit if she did not comply. A.R. was able to describe numerous incidents of physical abuse of her by Dustin Morsette during the course of their relationship, including a second forcible rape with a knife; being choked to the ground by Morsette in Stanley, North Dakota; being punched in the face causing her to strike a car door; and being pushed out of a car. A.R. testified that she continued to engage in prostitution after the first event because of the physical abuse, threats of physical abuse, and threats of sending nude photographs to her parents.

The testimony that the acts of prostitution expanded beyond the boundaries of the reservation does not negate the testimony that prostitution activities also occurred within the boundaries of the reservation. See United States v. Van Chase, 137 F.3d 579, 582 (8th Cir. 1998) ("Jurisdiction over an offense under 18 U.S.C. § 1153 exist if any portion of the crime takes place within Indian country.") The Court finds that A.R. testified to sufficient facts to establish that the prostitution activity occurred within Indian country and was initiated through force and coercion and continued thereafter. The evidence was sufficient for the jury to convict Morsette on this count.

The Court maintains its prior rulings during the trial and denies Morsette's Rule 29 motion for judgment of acquittal. As the Court explained during the trial, the testimony of the Government's witnesses was sufficient to establish the elements of each of the charged offenses. Morsette contends that the testimony of the victims is neither credible nor corroborated. The Court disagrees. To the contrary, the testimony of the victims and other corroborating witnesses was credible, consistent, and sufficient to sustain a conviction on all of the counts. The evil that pervaded the home where Medicine Bird Morsette and Dustin Morsette lived in New Town, North Dakota shocks the conscience of any reasonable and decent person. This case largely hinged on the credibility of the fact witnesses. The Eighth Circuit has repeatedly held that questions of credibility are best left for the jury to resolve. The jury heard multiple days of testimony from more than thirty witnesses. The Court will not substitute its judgment for that of the jury.

**B.    MOTION FOR NEW TRIAL**

The Eighth Circuit has described a district court's discretion in granting a new trial:

> Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the

> interest of justice so requires." "The district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and 'it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" United States v. Aguilera, 625 F.3d 482, 486 (8th Cir. 2010) (quoting United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002)). But "[m]otions for new trial based on the sufficiency of the evidence are generally disfavored, . . . and '[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.'" Id. at 487 (last alteration in original) (quoting Campos, 306 F.3d at 579).

United States v. Vega, 676 F.3d 708, 722 (8th Cir. 2012). The Eighth Circuit has also explained, "A district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." United States v. McClellon, 578 F.3d 846, 857 (8th Cir. 2009) (quoting United States v. Starr, 533 F.3d 985, 999 (8th Cir. 2008)).

As outlined above, the testimony of the victims and other witnesses was more than sufficient to establish the elements of each of the offenses and sufficient to sustain a verdict on all counts. The Court finds the testimony of the Government's witnesses (the victims) to be credible. In the exercise of its broad discretion, the Court expressly finds that no miscarriage of justice occurred and denies Dustin Morsette's motion for a new trial.

## III. CONCLUSION

The Court has carefully considered the entire record, the parties' briefs, and relevant case law. The Defendant's "Motion for Judgment of Acquittal and New Trial" (Docket No. 248) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 4th day of June, 2012.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court